*Served Third by : 29 Mar 20__ 7:30 P.M.*

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LINCOLN

| | |
|---|---|
| FISHING ROCK OWNERS' ASSOCIATION, INC., | Case No.  12-0801 |
| Plaintiff, | **SUMMONS** |
| and | |
| DAVID AND SHARON ROBERTS, | |
| Defendants. | |

TO:    DAVID ROBERTS AND SHARON ROBERTS, DEFENDANTS.

You are hereby required to appear and defend the Verified Complaint filed against you in the above entitled cause within thirty (30) days from the date of service of this Summons upon you, and in case of your failure to do so, for want thereof, Plaintiff will apply to the court for the relief demanded in the Verified Complaint.

**Notice to Defendant: Read these papers carefully!**
You must "appear" in this case or the other side will win automatically.  To "appear" you must file with the court a legal paper called a "motion" or "answer."  The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee.  It must be in proper form and have proof of service upon the Petitioner's attorney or, if the Petitioner does not have an attorney, proof of service upon the Petitioner.  If you have questions, you should see an attorney immediately.  If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

Gary C. Hamilton,  Attorney for Plaintiff

Gary C. Hamilton, OSB# 05274
605 SW Hurbert Street
PO Box 2354
Newport, OR 97365

STATE OF OREGON, County Of Lincoln )ss

I, undersigned attorney of record for Plaintiff, certify that the foregoing is an exact and complete copy of the original Summons in the above entitled action.

Gary C. Hamilton, Of Attorneys for Plaintiff
OSB #05274

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS.  You are hereby directed to serve a true copy of this Summons, a true copy of the Verified Complaint, Motion for Order to Appear and Show Cause and Order to Appear and Show Cause upon Defendants, David Roberts and Sharon Roberts, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

Gary C. Hamilton, Attorney for Plaintiff
OSB #05274

Page 1 - SUMMONS AND PROOF OF SERVICE

## PROOF OF SERVICE

STATE OF OREGON, County of Lincoln                    ) ss

       I hereby certify that I made service of the foregoing this Summons, a true copy of the Verified Complaint, Motion for Order to Appear and Show Cause and Order to Appear and Show Cause upon Defendants by delivering or leaving true copies of said this Summons, a true copy of the V Verified Complaint, Motion for Order to Appear and Show Cause and Order to Appear and Show Cause upon Defendants, certified to be such by the attorney for the Plaintiff, as follows :

### Personal Service Upon Individual(s)*
By delivering such true copy to the Defendants personally and in person, at

_____, on _____, 20_____, at _____
o'clock_____.M.

### Substituted Service upon individuals*
By delivering such true copy at Respondent's dwelling house or usual place of abode, to-wit:

_____, to _____, who is a person over the age of 14 years and a member of the household of the Respondent, and a member of the household served on _____, 20_____, at _____ o'clock_____.M.

### Office Service*
By delivering such true copy at the office which the Respondent maintains for the conduct of business at
_____
_____, with _____, the person who is apparently in charge, on _____, 20_____,during normal working hours at _____o'clock ____.M.

### Mail Service Individual*
By mailing such true copy to the Respondent by first class mail and ALSO by (circle one) certified or registered mail with return receipt requested.  Express mail.

### Service Upon Tenants of a Mail Agent***
By delivering such true copy to _____, a person apparently in charge of _____ on _____, at _____o'clock ____.M. Prior to effecting such service , I made diligent inquiry but could not find the tenant(s) so served.

### Service on Corporations, Limited Partnerships or Unincorporated Associations Subject to Suit Under a Common Name
By delivering such true copy to _____, by (a) delivering true copy personally and in person to_____who is a/the _____(specify registered agent, officer, director, etc.) thereof; OR (b) leaving true copy with _____the person who is apparently in charge of the office of_____, who is a/the _____ at _____, on _____ at ____o'clock ____.M.

I further certify that I am a competent person 18 years of age or older and a resident of the state of service or the State of Oregon, and that I am not a party to nor an officer, director or employee of, nor attorney for any party, corporate or otherwise; that the person, firm or corporation served by me is the identical person, firm or corporation named in the action.

Dated_____

_____
                                  Sheriff

_____
                                  Deputy

Signature _____

Type or Print Name _____

Address _____

City _____  State _____  Zip _____  Phone _____

The signature lines on the left should be used only by an Oregon county sheriff or deputy; all other servers complete certificate on the right.  *Where substituted or office service is used, the Plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and Complaint to the Defendant at the Defendant's dwelling or usual place of abode, together with a statement of the time, date and place at which such service was made.

Page 2  Summons and Proof of Service

**Please conform
and return to:
Gary C. Hamilton**

1

2

3          IN THE CIRCUIT COURT OF THE STATE OF OREGON

4                    FOR THE COUNTY OF LINCOLN

5    FISHING ROCK OWNERS'
     ASSOCIATION, INC.
6                                          Case No. 120801
                    Plaintiff,
7                                          **VERIFIED COMPLAINT FOR
          v.                               DECLARATORY JUDGMENT,
8                                          INJUNCTION AND OTHER RELIEF**
     DAVID and SHARON ROBERTS
9
                    Defendants.
10

11
          Plaintiff, by and through its attorney, alleges as follows:
12
                                   1.
13

14        Plaintiff, Fishing Rock Owners' Association, Inc. is an Oregon non-profit corporation.

15   Said association is responsible for ensuring that all property owners within the Fishing Rock

16   subdivision comply with the recorded Protective Covenants and Restrictions affecting the

17   Fishing Rock subdivision.

18                                 2.

19
          Defendants, David Roberts and Sharon Roberts own Lots 10, 11 and 12 within the
20
     Fishing Rock subdivision.
21

22                                 3.

23        All lots within the Fishing Rock development are subject to Protective Covenants and

24   Restrictions that were originally recorded on August 7, 1992 and Restated on January 26, 2007, a

25   true copy of the Restated Protective Covenants and Restrictions (hereinafter referred to

26   collectively as Fishing Rock CC&Rs) are attached and marked as Exhibit "1" and incorporated

Page 1 – VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF

1   in this Complaint by reference thereto.

2                             4.

3      Article 5 of the Fishing Rock CC&Rs provides in part:

4      5.1 Use Restrictions and Obligations. Each lot is intended for residential and recreational

5           use. No commercial activities of any kind shall be carried on in the Living Unit or on

6

7           any portion of the Property. Fractional ownership is prohibited, and no timeshare of

8           any Lot or Living Unit shall be established, created or maintained.

9                             5.

10     On or about March 9, 2011, Defendants advised Plaintiff that it was going to open and

11  operate a business enterprise at property they own within the Fishing Rock Subdivision, which is

12  in violation of Article 5.1 of the Fishing Rock CC&Rs.

13                           6.

14

15     Thereafter, Defendants created a website soliciting business for their proposed enterprise

16  and have recently placed signs within their residence advertising said business, which is in

17  violation of Article 5.1 of the Fishing Rock CC&Rs.

18            ACTION FOR DECLARATORY JUDGMENT

19     Plaintiff re-alleges paragraphs one through six above.

20                           7.

21

22     There is a justiciable controversy between Plaintiff and Defendants, and Plaintiff is

23  entitled to relief.

24                           8.

25     By their actions, Defendants have affected Plaintiff's rights, status, and interest as

26  property owners within the Fishing Rock subdivision by violations of the Fishing Rock CC&Rs,

1    by which both Plaintiff and Defendants are bound.

2                                    9.

3        Defendants' position in this controversy is that they have complied with all requirements

4    under the Fishing Rock CC&Rs.

5                    ACTION FOR PERMANENT INJUNCTION

6        Plaintiff re-alleges paragraphs one through six above.

7

8                                   10.

9        Defendants have proceeded with their intentions of operating a business enterprise in

10   violation of the requirements that no commercial activities of any kind shall be carried on in the

11   Living Unit or on any portion of the Property under the Fishing Rock CC&Rs and Plaintiff is

12   being irreparably harmed by said operation of a business enterprise within the Fishing Rock

13   subdivision by the creation of non-residential uses that are out of character of the neighborhood

14   and against the spirit of the Fishing Rock CC&Rs.

15

16                                  11.

17       Plaintiff has no adequate remedy of law.

18                        ACTION FOR DAMAGES

19       Plaintiff re-alleges paragraphs one through six above.

20

21                                  12.

22       As a direct result of these actions and violations by Defendants, Plaintiff suffers an

23   adverse impact upon the value and enjoyment of their property, located within Fishing Rock

24   Subdivision.  This adverse impact would be ameliorated if the Defendants would cease and

25   desist their plans to operate a business enterprise within Fishing Rock Subdivision and conform

26   with the Fishing Rock CC&Rs.  Defendants desire to operate a business enterprise within

Page 3 – VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF

1    Fishing Rock Subdivision is in violation of the Fishing Rock CC&Rs and does not fit within the

2    neighborhood of the surrounding properties and there by diminished the value of said properties

3    in the amount of not less than $100,000.00.

4            WHEREFORE, Plaintiff prays for a judgment as follows:

5    1.      A declaratory judgment that Defendants have violated the Fishing Rock CC&Rs,

6            and requiring Defendants to show cause why further relief should not e granted

7            forthwith;

8

9    2.      For a prohibitory injunction enjoining Defendant and/or their agents, successors

10           or assigns from operating a business enterprise on property located within Fishing

11           Rock Subdivision;

12   3.      For a mandatory injunction requiring Defendants to use their property for

13           residential purposes in conformance with the Fishing Rock CC&Rs;

14

15   4.      In the event injunctive relief is denied awarding Plaintiff money damages in the

16           amount of not less than $100,000.00 for Defendants' violation of the Fishing

17           Rock CC&Rs for loss of value to their real properties;

18   5.      For Plaintiff's costs, attorney fees and disbursements herein incurred; and

19   6.      For such other relief as the court deems just and proper.

20

21   DATED: March /5th, 2012.

22

23

24                                          Gary C. Hamilton
                                            Attorney for Plaintiff
25

26

ATTORNEY FOR PLAINTIFF
Page 4 – VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF

Gary C. Hamilton
626 SW Hurbert, PO Box 2354 Newport, Oregon   97365
(541) 264-8399   Fax (541) 264-8401 [garychamiltonlaw@yahoo.com]

1

Gary C. Hamilton, OSB #05274

2    626 S.W. Hurbert Street
     PO Box 2354

3    Newport, OR  97365
     Telephone No.:   (541) 264-8399

4    Facsimile No.:    (541) 264-8401
     E-Mail:  garychamiltonlaw@yahoo.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 5 – VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF

STATE OF OREGON } ss.
County of Lincoln

I, Dana W. Jenkins, County Clerk, in and for said county, do hereby certify that the within instrument was received for record, and recorded in the Book of Records of said county at Newport Oregon. WITNESS my hand and seal of said office affixed.

DANA W. JENKINS, Lincoln County Clerk

*21* Pages

Doc : 200701291
Rect: 700817    126.00
01/26/2007 04:48:35pm

After recording, return to:
Litchfield & Carstens LLP
P.O. Box 1730
Newport, OR 97365

## RESTATED AMENDED PLANNED COMMUNITY DECLARATION AND COVENANTS, CONDITIONS AND RESTRICTIONS OF FISHING ROCK
### Amended September 2005
This Amended Planned Community Declaration and Covenants, Conditions and

Restrictions of Fishing Rock supersedes and replaces all prior recorded Planned Community Declaration and Covenants, Conditions and Restrictions of Fishing Rock and all amendments thereto, and shall be effective upon its recording in Lincoln County, Oregon, and is made and executed this 26 day of _January_, 200 7, by Fishing Rock Owners Association Oregon Planned Community.

The planned community project known as Fishing Rock as shown on the attached EXHIBIT 1A (hereinafter "Fishing Rock"), is subject to this Planned Community Declaration and Covenants, Conditions and Restrictions of Fishing Rock.

### ARTICLE 1: DEFINITIONS

1.1    "Administrator" shall mean Declarant until such time as Declarant has delegated and assigned to the Association all of Declarant's powers and responsibilities hereunder has conveyed to the Association all of its right, title and interest in the common areas and private ways in Fishing Rock and has transferred to the Association all monies in the maintenance fund after which the Administrator shall be the Association.

1.2    "Articles of Incorporation" means the articles of incorporation of the Association.

1.3    "Association" means the Fishing Rock Owners' Association, Inc., an Oregon non-profit corporation to be formed by Declarant not later than the date on which the first Lot in the Fishing Rock is conveyed.

1.4    "Board" means the board of directors of the Association.

1.5    "Bylaws" means the bylaws of the Association, as amended from time to time.

1.6    Commercial Activities" includes, but is not limited to, any activity open to any member of the public for the purpose of providing a commodity or service, or any lease or rental of a Lot or Living Unit for a period of less than one full calendar month and from which a rental fee is acquired, but it does not include activities relating to the sale or long term rental of Lots or Living Units, nor does it include maintaining a professional personal library, keeping personal business or professional records or accounts, making or receiving personal business or professional telephone calls, or occasionally conferring with business or professional associates within the Living Unit.

Page -1-RESTATED FISHING ROCK DECLARATION

1.7    "Common Property" means any real property or interest in real property which is owned or leased by the Association, or designated in a plat for transfer to the Association. Including property designated as Private Way or Open Space. "Common Property" includes personal property owned or leased by the Association.

1.8    "Declarant" means Fishing Rock Enterprises, Inc. and any of its successors or assigns.

1.9    Fishing Rock Rules and Regulations" shall mean the rules and regulations adopted as provided in Article 5.

1.10    "Fractional Ownership" means fee title or other legal claim of right to possession or occupancy of any Lot or Living Unit by more than one entity, such as a partnership, limited liability company, limited liability partnership, corporation, or other business entity, or more than four persons who are not all related by either blood or marriage. For the purposes of this section a married couple holding title to a fractional share as tenants by the entirety shall constitute one person.

1.11    "Guest" shall mean any person who is in Fishing Rock at the invitation of a Resident and who, to the extent required by the Fishing Rock Rules and Regulations, either is accompanied by a Resident or has in his possession an unexpired guest card issued by the Administrator.

1.12    "Living Unit" means a building or a portion of a building located upon a Lot and intended for separate occupancy and ownership; it does not include a building or portion of a building on Common Property.

1.13    "Lot" means a unit of land in the Property that is platted for the purpose of constructing thereon a Living Unit. At such time as a Lot has a Living Unit constructed upon it, it ceases to be a Lot for purposes of voting and assessment pursuant to this Declaration.

1.14    "Mortgage" means a mortgage or a deed of trust pertaining to a Lot or Living Unit.

1.15    "Mortgagee" means a mortgagee under a mortgage, a beneficiary under a trust deed, or a vendor under a land sale contract.

1.16    "Occupant" means the occupant of a Living Unit, including a lessee.

1.17    "Open Space" shall mean any portion of Common Property dedicated to open space on a subdivision plat on file with Lincoln County.

1.18    "Owner" means the fee interest holder or contract purchaser of any Lot or Living Unit that is part of the Property, but does not include a mortgagee who has an interest in a Lot or Living Unit merely as security for the performance of an obligation.

1.19    "Plat" means the final map, diagram, drawing, re-plat or other writing containing the descriptions, locations and other information on Common Property, Living Units and/or Lots in a subdivision of all or a portion of the real property in Fishing Rock.

1.20    "Private Way" shall mean any area designated as such in a subdivision plat of Fishing Rock.

Page -2-RESTATED FISHING ROCK DECLARATION

1.21   'Property" means each parcel of real property for which Declarant records a plat and declares all or portions thereof to be part of Fishing Rock  Property" also means all improvements and fixtures located on the Property.  Property" includes tracts of Common Property identified as such in the recorded Plat, whether or not such tract has been conveyed to the Association  Property" does not include any portion of the real property described in Exhibit A unless and until a Plat and declaration for such portion are recorded by Declarant.

1.22   "Resident" shall mean any person who is an Owner or Occupant of a Living Unit, together with members of his immediate family, provided that a person shall be a Resident only when in possession of a Living Unit.

1.23   'Timeshare  means a timeshare estate or a timeshare license.

1.24   Timeshare Estate" means a right to occupy an accommodation during 5 or more separated timeshare periods over a period of at least 5 years. including renewal options  coupled with a freehold estate or an estate for years in the time share property.

1.25   'Timeshare License"  means a right to occupy an accommodation during 5 or more separated timeshare periods over a period of more than 3 years  including renewal options  not coupled with a freehold estate or an estate for years.

1.26   "Timeshare Plan" means an arrangement, whether by membership, agreement  tenancy in common, sale, lease. deed. rental agreement  license, right to use agreement or otherwise, in which an owner receives a timeshare estate or a timeshare license and the right to use accommodations and the facilities that are part of the timeshare property.

### ARTICLE 2: NAME

The name of the Community is "Fishing Rock".

### ARTICLE 3: GENERAL DEVELOPMENT PLAN

3.1   *Development.*  Declarant proposes to develop and plat a total of 24 Lots in Fishing Rock. Declarant will record a Plat of Fishing Rock that will identify the number of Lots and their locations and any tracts which will or may be subsequently conveyed to the Association as Common Property .

3.2   *Common Property.*  The Plat shall depict the tracts which will be transferred Property to the Association as Common Property  The Common Property is more particularly described  in Exhibit B attached hereto.  Declarant shall convey the Common Property to the Association in accordance with Article 6.3 of this Declaration.

Page -3-RESTATED FISHING ROCK DECLARATION

Exhibit  1
Page  3  of  21

## ARTICLE 4: ARCHITECTURAL CONTROL

4.1    *Architectural Control.* The Board shall appoint a Design Committee initially consisting of three members. The Board may remove and replace any appointee at any time, with or without cause. The members of the Design Committee may or may not be members of the Board. The Design Committee shall have the authority and duty to regulate the external design, appearance, location and maintenance of any and all improvements on the Property and any and all landscaping thereon in accordance with the provisions of this Declaration and the Architectural Standards for Fishing Rock.

4.2    *Committee Approval Required.* No building, fence, wall, patio, deck or other structure or improvement shall be commenced, erected, or maintained upon the Property nor shall any exterior addition to, or change or alteration therein, be made, nor shall any landscaping of any portion of the Property be commenced or maintained until the plans and specifications, including but not limited to choice of exterior colors and materials of structures have been submitted to and approved in writing by the Design Committee pursuant to the procedure outlined in the Architectural Standards for Fishing Rock.

4.3    *Architectural Standards.* The Board may, from time to time, amend, modify or revise provisions of the Architectural Standards, including the procedures for submission to and approval of the Design Committee outlined therein and including imposing an application fee; provided, however, that no such amendment, modification, or revision shall be binding upon the Owners until notice of the same has been given to the Owners by the Board, and no such amendment, modification or revisions shall affect structures, improvements, or landscaping approved prior to the enactment of such amendment, modification or revision.

## ARTICLE 5: USE RESTRICTIONS AND OBLIGATIONS

5.1    *Use Restrictions and Obligations.* Each Lot is intended for residential and recreational use. No commercial activities of any kind shall be carried on in the Living Unit or on any portion of the Property. Fractional ownership is prohibited, and no timeshare of any Lot or Living Unit shall be established, created or maintained.

5.2    *Animals.* Other than a maximum of two domestic pets per Living Unit, no animals or fowls shall be raised, kept, or permitted in Fishing Rock. No animals of any kind shall be kept, bred or raised for commercial purposes. All pets shall be confined to the Resident's Living Unit or Lot and shall not be permitted to run free or otherwise to be or become a nuisance or source of annoyance to other Residents or Owners. All owners of pets shall abide by municipal sanitary regulations, the leash laws, and rules or regulations promulgated by the Board. An Owner, Resident or Guest may be required to remove a pet after receipt of two notices in writing from the Board of violations of this section or of any such laws, rules, or regulations governing pets.

5.3    *Consolidation of Lots.* If an Owner owns all of a Lot (the "Basic Lot"), together with one or more contiguous Lots or contiguous portions thereof (the "Additional Lot" or "Additional Portion") and wishes to consolidate the Basic Lot and the Additional Lot or Additional Portion, he may do so if allowed by law. The consolidation shall be effected by the Owner filing in the records of deeds of Lincoln County, Oregon, a declaration stating that the two areas are consolidated, and complying with all applicable requirements of Lincoln County.

Page -4-RESTATED FISHING ROCK DECLARATION

Exhibit  1
Page  4  of  21

The consolidation provided for in this section shall have the following effects:

(a)    The consolidated areas shall constitute one Lot for all purposes under this Declaration including the payment of assessments;

(b)    Only one residence may be constructed within the consolidated area;

(c)    No residence or other structure may be placed upon the remainder of a Lot a portion of which was consolidated with another Lot but which remainder has not been consolidated with another Lot, unless the area of such remainder constitutes at least 95 percent of the original area of the Lot; and

(d)    Once consolidated, the consolidated area may not be partitioned.

5.4    *Fishing Rock Rules and Regulations*. The Fishing Rock Rules and Regulations may, among other things, provide for any of the following:

(a)    For speed and other traffic controls, safety patrols, parking controls and restrictions upon the type of vehicles which may use the Private Ways;

(b)    As to the spaces within common areas which may be used for particular recreational or service purposes and as to the times and manner in which such spaces may be used;

(c)    Charges for use of recreational facilities and for services supplied by the Administrator, to be applied uniformly to all Residents and Guests;

(d)    For the control of noise, for litter control and trash disposal, for pet and animal control, for fixing and collecting of building permit charges and for the personal conduct of Residents and Guests while on the Common Property and Private Ways; and

(e)    For conditions upon which Guests will be entitled to use the Common Property and Private Ways and for the terms and conditions upon which guest cards will be issued

All rules and regulations must be applicable on a nondiscriminatory basis. However, provisions uniformly applicable to a class of persons, such as children of particular ages will not be deemed discriminatory. A current copy of the Fishing Rock Rules and Regulations shall be kept on file at the principal office of the Administrator at all times  Such rules and regulations shall have the same force and effect as if set forth herein as a part of this Declaration.

5.5    *Vehicles.* No trucks (except pickups of 3/4 ton weight or less), campers, motorhomes, trailers boats, golf carts, motorcycles, or similar recreational vehicle shall be parked on any Lot or Private Way other than temporarily (in no case in excess of 24 hours) and then solely for the purpose of loading or unloading or a service call; provided, however, that such vehicle may be kept within an Owner's enclosed garage or fenced yard.

Page -5-RESTATED FISHING ROCK DECLARATION

Exhibit    1
Page    5    of    21

5.6     *Additional Rules and Regulations.* The Board from time to time may adopt, modify , or revoke rules and regulations governing the conduct of persons and the operation and use of the Property as it may deem necessary or appropriate in order to assure the peaceful and orderly use and enjoyment of the Property  No change may be made that is in conflict with the Lincoln County Planning Commission's conditions of approval for Fishing Rock  Such action may be modified by vote of not less than two-thirds (2/3) of members voting in person or by proxy, at a meeting duly called for this purpose. A copy of the rules and regulations, upon adoption, and a copy of each amendment, modification or revocation thereof, shall be delivered by the Secretary promptly to each Owner and shall be binding upon all Owners and Residents from the date of delivery.

5.7     *Restrictions on Height of Improvements.* Improvements on Lots 6 through 14 shall be limited to 16 feet above average grade measured at the front (street) Lot line. Improvements on Lots 5, 15, 16, 17, 19  20 and 21 shall be limited to 20 feet above the average grade of the Lot.

5.8     *Restrictions on Side Yard Improvements.* The minimum improvement setback for side yards shall be 10 feet.

5 9     *Restrictions on Setbacks from Oceanfront Common Area.* Improvements on Lots 6 through 14 shall be located no closer than 10 feet from their respective borders with the oceanfront Common Property.

5 10    *Restrictions in Regard to Fogarty Avenue.*

   (a)     Improvements on Lots 1, 15, 16, 17. 18 and 24 must maintain a minimum 20-foot setback from the Fogarty Avenue right-of-way; and

   (b)     No ingress to or egress from Fogarty Avenue will be permitted to any Lot  Ingress to and egress from each Lot shall be provided through Private Ways..

5 11    *Restriction on Surface Water Disposal.* All surface water from roofs, driveways or other sources shall be routed into the storm sewer system provided by Declarant

5 12    *General Provisions for and Restrictions on Use of Private Areas.*

   (a)     *Maintenance.* The Owner of each Lot shall maintain the grounds and improvements of his Lot in a clean and attractive condition, in good repair, and in such fashion as not to create a fire hazard.

   (b)     *Residential Use.* No buildings other than one single-family dwelling and one garage for private use may be constructed on any Lot.

   (c)     *Temporary Structures.* Temporary structures which have been approved by the design committee shall be permitted on a Lot during the period of construction of a dwelling house. However, any such temporary structure shall be removed within 30 days after completion of the dwelling house or within one year after the date upon which the temporary structure was erected, whichever period expires first.


Page -6-RESTATED FISHING ROCK DECLARATION

Exhibit __1__
Page _6_ of _21_

(d)  *Appearance.* All garbage, trash, cuttings, compost, refuse, garbage and refuse containers, oil tanks, clothes lines and other service facilities, shall be screened from view from neighboring Lots and from the Common Property in a manner approved by the design committee.

(e)  *Signs.* No signs shall be placed or kept on any Lot other than signs stating the name of the Residents and the address of the Lot; provided that an Owner may advertise his Lot for sale or lease by means of a sign provided or approved by the Administrator and placed at a location specified by the Administrator. All signs are subject to Design Committee Approval.

(f)  *View.* Owners shall restrict the height of vegetation and trees on their Lots to preserve other Owners' views. Limitation as to the height of improvements shall be as specified in Article 5.7 herein. The Design Committee shall be responsible for determining what trees or other vegetation on a Lot unreasonably interfere with the view from other Lots. The view restrictions are not intended to require removal of trees or vegetation which were on any Lot when first sold; rather the intent is to control future growth. If the Design Committee determines that view interference exists, it shall send a notice in writing to the Owner on whose Lot the offending trees or vegetation are located, which notice shall set forth the extent to which trees or vegetation shall be pruned or removed. If within 30 days of receipt of such notice the Owner of the Lot to which notice has been addressed has not caused the trees or other vegetation to be pruned or removed to the extent required by the Design Committee, the Administrator may do so at the Owner's expense.

(g)  *Offensive Activities.* No offensive activity shall be allowed on any Lot nor shall anything be done or placed upon any Lot that interferes with or jeopardizes the enjoyment of other Lots or the Common Property

5.13  *Uses Prohibited Without Design Committee Consent.* Unless the consent of the Design Committee has first been obtained, no one may:

(a)  Park or keep a trailer, truck, camper, motor home, boat or boat trailer in any part of Fishing Rock, except on a temporary basis for 24 hours or less at a place where it is visible from any other Lot or from any Common Property;

(b)  Install or maintain on any Lot exterior lighting or noise-making devices; or

(c)  Remove or plant trees, shrubs or other vegetation on any part of Fishing Rock.

Page -7-RESTATED FISHING ROCK DECLARATION

Exhibit 1
Page 7 of 21

5 14    _Uses Prohibited Without the Consent of the Administrator._   Except with the consent of the Administrator, no one may:

       (a)     Conduct commercial activities of any kind;

       (b)     Light exterior fires, other than barbecue or trash disposal fires contained within appropriate receptacles and in compliance with all applicable laws and ordinances; or

       (c)     Reside on a lot until construction of the main residence thereon has been substantially completed

### ARTICLE 6: COMMON PROPERTY

6.1    _Common Property Tracts._ The Plat shall depict the Private Ways and the non- street tracts, if any, which will or may be transferred to the Association as Common Property . Such tracts may contain landscaping and/or facilities or improvements for the use, or benefit, in common, of the members of the Association. On the Common Property, Declarant agrees to provide paved roads, a walking path, beach access, a sewer system, storm sewers, a water system and underground telephone, natural gas, electricity and television cable to a point accessible to each lot. Declarant is under no obligation to improve the Common Property with swimming pools, tennis courts, meeting halls, or similar recreational facilities, at its own expense, prior to conveying the same to the Association.

6.2    _Private Ways._ Each Owner is hereby granted a nonexclusive easement to use Private Ways for ingress and egress to/from his lot, and ingress and egress to/from Fogarty Avenue. Each Owner and each Resident is hereby granted a nonexclusive easement to use Private Ways for the purpose of walking or traveling thereon by appropriate means. Each Resident may permit his Guests and Invitees to use the Private Ways for appropriate purposes. The easements herein granted shall be appurtenant to and assignable with each lot, but shall not otherwise be assignable. Use of Private Ways shall be subject to the Fishing Rock Rules and Regulations. The Administrator may grant free access on Private Ways to police, fire and other public officials, to employees of utility companies serving Fishing Rock and to such other persons to whom the Administrator believes access should be given for the benefit of the Residents. Declarant may use the Private Ways for its own purposes and for the purpose of locating utilities thereon. By granting the right to Residents and others to use Private Ways, Declarant does not intend to dedicate Private Ways to the public but rather intends to preserve the private character of such ways. The Administrator shall be deemed to have dedicated such ways to the public only if it shall file in the records of Lincoln County an instrument clearly evidencing its intention to dedicate such ways to the public.

6.3    _Conveyance to the Association._ At such time as Declarant deems the Association financially capable of operating and maintaining a tract of Common Property, but no later than 120 days after the turnover meeting described in Article 7 10 of this Declaration. Declarant shall convey said tract to the Association. The Association shall accept each such conveyance and shall thereafter be responsible to operate and maintain such tract and any facilities thereon in good repair and in an attractive appearance at the Association's expense. Prior to the conveyance, the Declarant shall be responsible to maintain such tract and facilities at Declarant's expense.

       Page -8-RESTATED FISHING ROCK DECLARATION

Exhibit ___1___
Page ___8___ of ___21___

6.4    *Mortgage or Conveyance of Common Property.* After conveyance to the Association, the Common Property shall not be mortgaged or conveyed without the affirmative vote of four-fifths of the members voting in person or by proxy at a meeting duly called for that purpose: provided, however that this Article shall not apply to the granting of easements for public utilities or other public purposes.

After conveyance to the Association, the Board shall have the sole authority to negotiate with any public or private body or person having the power of eminent domain and to sue or defend in any litigation involving such bodies or persons with respect to the Common Property or any portion thereof which is the subject of any condemnation or eminent domain proceeding.

6.5    *Members' Easements.* Subject to the provisions of this Declaration and rules and regulations of the Association, every Owner shall have a right and easement to the Common Property which easements shall be appurtenant to and shall pass with the title to every Lot or Living Unit. The Owner's easements created hereby shall be subject to all the rights and powers of the Association set forth in this Declaration.

### ARTICLE 7; ADMINISTRATOR AND ASSOCIATION

7.1    *Powers and Responsibilities of the Administrator.* In addition to such other powers and responsibilities as shall be given to or imposed upon it by this Declaration, the Administrator shall be responsible for:

(a)    Maintaining all Private Ways, the Common Property and the improvements thereon;

(b)    Constructing such improvements on the Private Ways and the Common Property as it deems desirable for the benefit of the Residents of Fishing Rock and their Guests in accordance with the Fishing Rock Rules and Regulations;

(c)    Enforcing all covenants, conditions and restrictions of Fishing Rock;

(d)    Promulgating and enforcing the Fishing Rock Rules and Regulations and enforcing the Architectural Standards, the Design Committee rules and decisions of the Design Committee;

(e)    Paying all ad valorem taxes and assessments imposed on the Common Property and Private Ways within Fishing Rock;

(f)    Providing such services as it deems appropriate and beneficial;

(g)    Procuring and maintaining insurance on all improvements constructed on the Common Property;

(h)    Fixing and collecting fees for the use of recreational and service facilities within the Common Property. All such fees shall be paid into the common expense fund.

Page -9-RESTATED FISHING ROCK DECLARATION

Exhibit _1_
Page _9_ of _21_

2

7.2     *Delegation.*  The Administrator may at any time delegate to the Association the responsibility for performing any duty or function of the Administrator and the Association shall accept such responsibility if the Administrator arranges to pay the Association the expenses reasonably incurred in performing such duty or function.

7.3     *Limitation of Liability.*  The Administrator shall not be liable for failure to carry out any of its responsibilities enumerated herein if there are not sufficient monies in the common expense fund to do so. The Administrator shall have sole power to determine for which of the authorized purposes to expend funds. Neither the Administrator nor any officer or director thereof shall be liable to any Owner, to any Resident, or to the Association for any action or failure to act by the Administrator, provided that in accordance with actual knowledge possessed by it, the Administrator has acted in good faith.

7.4     *Organization-Adoption of Bylaws.*  Upon executing and recording this Declaration, Declarant shall file the Articles of Incorporation and organize the Association to provide for the preservation and architectural control of the Property, the maintenance of the Common Property, and to promote the health, safety, and welfare of the Owners and Residents. Declarant shall simultaneously adopt and record Bylaws for the Association.

7.5     *Board of Directors.*  The affairs of the Association shall be governed by a Board of Directors as provided in the Bylaws. The Declarant shall appoint the initial directors of the Board.

7.6     *Power and Duties of the Association.*  The Association shall have such powers and duties as may be granted or delegated to it by law, the Articles of Incorporation, this Declaration, and the Bylaws.

7.7     *Membership.*  Every Owner shall be a member of the Association. The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation. Membership in the Association shall be appurtenant to, and shall not be separated from, ownership of any Lot or Living Unit. Transfer of ownership of a Lot or Living Unit automatically transfers membership in the Association.

7.8     *Voting Rights.*  The Declarant shall be entitled to three votes for each platted and undeveloped Lot it owns. All other members shall be entitled to one vote for each Lot or Living Unit owned; provided, however, that at such time as a Living Unit has been constructed on a Lot, the vote for the Lot shall cease to exist; and provided that the Owners of any Lot or Living Unit shall have only one vote, no matter how many persons may own that particular Lot or Living Unit.

7.9     *Transitional Meeting.*  The Declarant shall call a meeting of the members of the Association for the purpose of electing a transitional advisory committee to the Board as provided in Article 3 of the Bylaws no later than sixty days after the Declarant has conveyed the Lots representing 50% of the votes of the Association. Notice of such meeting shall be given to each Owner at least seven but not more than fifty days before such meeting and shall state the purpose and the time and place where it is to be held. The Declarant may, at its option, call the transitional meeting prior to the time specified herein. If Declarant has not called the meeting within the time specified herein the meeting may be called and notice given by any Owner or any first mortgagee of a Lot or Living Unit.

Page -10-RESTATED FISHING ROCK DECLARATION

7.10   *Turnover Meeting.* Not later than 120 days after Lots representing 75% of the votes of the Association have been conveyed by Declarant, the Declarant shall call a meeting of the members of the Association for the purpose of transferring control of the Association to all members, including Declarant. Notice of such meeting shall be given to each Owner at least seven but not more than fifty days prior to the meeting and shall state the purpose of the meeting and the time and place where it is to be held. At such turnover meeting, the directors appointed by the Declarant shall resign and successor directors will be elected to replace them as provided in Article 4 of the Bylaws. The Declarant may at its option, call the turnover meeting prior to the time specified herein; however, if Declarant has not called the meeting within the time specified herein, the meeting may be called and notice given by any Owner or any first mortgagee of a Lot or Living Unit.

## ARTICLE 8: COVENANTS FOR ASSESSMENTS

8.1   *Creation of Lien and Personal Obligation for Assessments.* The Declarant hereby covenants, and each Owner of any Living Unit or Lot by acceptance of a deed therefore, whether or not expressed in such deed, is hereby deemed to covenant and agrees to pay the Association (1) annual assessments or charges, (2) special assessments, and (3) individual assessments to be established and collected as hereinafter provided.

All such assessments, together with interest thereon and together with attorney fees and costs of collection thereof as hereinafter provided, shall be a continuing lien upon the Living Unit or Lot against which each such assessment is made. Each such assessment, together with interest thereon, attorney fees and costs of collection thereof, shall also be the personal obligation of the person who was the Owner of such Living Unit or Lot at the time when the assessment fell due as well as a lien on his respective Living Unit or Lot. The personal obligation for delinquent assessments shall not pass to an Owner's successors in title unless expressly assumed by them, but the lien of the assessment shall run with the Lot or Living Unit.

8.2   *Purpose of Annual Assessments.* The annual assessments levied by the Association shall be used exclusively to promote the health, safety, and welfare of the Owners and Residents and to pay the common expenses of the Association. Common expenses shall include but not be limited to:

(a) Expenses of administration;
(b) Expenses of maintenance of the Common Property after conveyance to the Association;
(c) Cost of insurance or bonds;
(d) Costs of funding reserves;
(e) Any deficit in common expenses for any prior fiscal year of the Association;
(f) Any other items properly chargeable as an expense of the Association; and
(g) Any other items agreed upon as common expenses by the voting members

8.3   *Reserve Accounts for Major Repair and Replacement of Improvements.* The Declarant shall establish and the Association shall maintain a reserve account or accounts for repair or replacement of those structures or improvements, including streets, on the Common Property which will naturally require replacement in more than three and less than 30 years taking into account the estimated remaining life of such items and the replacement cost thereof. The reserve account or accounts will be funded from the annual assessments each year provided that that portion of the annual assessments allocable to the reserve account shall begin accruing from the

Page -11-RESTATED FISHING ROCK DECLARATION

Exhibit _____1_____
Page _11_ of _21_

date the first Lot assessed is conveyed, and that the Declarant may defer payment of the accrued reserve account assessment for any Lot until it is conveyed. The initial budget of the Association shall provide for not less than five percent of the amounts of each annual assessment to be paid into the reserve account. That initial amount shall not be increased or decreased nor shall the funds be used for any purpose other than defraying all or part of the costs of major repair or replacement as provided herein, except by a vote of three fourths (3/4) of the members voting in person or by proxy at an annual meeting or special meeting duly called for this purpose at any time following the second year after the Association has assumed administrative responsibility for Fishing Rock at the turnover meeting. The Board shall invest the reserve funds in an insured interest-bearing account until needed.

8.4    _Maximum Annual Assessment._ Until January 1 of the year immediately following the conveyance of the first Lot or Living Unit to an Owner other than Declarant. the maximum annual assessment shall be $600 per year for each Lot or Living Unit assessed. The Board may increase the maximum annual assessment each year not more than five percent above the maximum assessment for the previous year without a vote of the membership.

The maximum annual assessment may be increased above five percent by a vote of two-thirds of the members voting in person or by proxy, at an annual meeting or special meeting duly called for this purpose. The Board may fix the annual assessment at any amount not in excess of the maximum  The first annual assessment shall be $600.

8.5    _Special Assessments for Capital Improvements._ In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the purposes of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Property for which the reserve account is inapplicable or inadequate  provided that the Association obtains approval of such assessment by two-thirds of the votes of the members voting in person or by proxy  at a meeting duly called for that purpose

8.6    _Uniform Rate of Assessment._ Except as hereinafter provided, both annual and special assessments must be fixed at a uniform rate for all Lots and Living Units; provided. However, that at such time as a Living Unit on a Lot is assessed, the Lot shall no longer be assessed. A Living Unit shall be assessed at such time as an occupancy permit has been issued by the appropriate governing body.

8.7    _Date of Commencement of Annual Assessments._ The annual assessments provided for herein shall commence no later than the first day of the month which commences 60 days following the conveyance of the first Lot or Living Unit to an Owner other than Declarant. The first annual assessment shall be adjusted according to the number of months remaining in the calendar year  The Board shall fix the amount of the annual assessment at least 30 days in advance of each annual assessment period. Written notice of the annual assessment shall be sent to the Owners of every Lot or Living Unit subject thereto. If the Board fails to fix the amount of the assessment and give notice thereof, the assessment fixed for the preceding year shall continue until new assessments are fixed and notice given as provided herein. The annual assessments may be made payable on a monthly, quarterly. or annual basis  and with discount terms  if any  as determined by the Board.

Page -12-RESTATED FISHING ROCK DECLARATION

Exhibit _1_
Page _12_ of _21_

8.8   *Exemption from Assessments.*  No Lot or Living Unit owned by Declarant shall be subject to any annual or special assessment until it has been sold or leased to a person other than Declarant.

8.9   *Individual Assessments.*  The Association may assess an Owner individually for common expenses incurred through such Owner's fault, direction, or failure to perform the obligations imposed on Owners by the Declaration, the Bylaws, the Architectural Standards, or the Fishing Rock Rules and Regulations  Further, an Owner shall be assessed individually for fines, charges and expenses incurred by the Association in the process of collecting assessments or enforcing this Declaration, the Bylaws, the Architectural Standards, or the Fishing Rock Rules and Regulations.

### ARTICLE 9: COLLECTION OF ASSESSMENTS & ENFORCEMENT

9.1   *Compliance with Declaration, Bylaws, Rules and Regulations.*  Each Owner, Resident and Guest shall comply with the Declaration, Bylaws, and all rules and regulations adopted pursuant thereto.

9.2   *Authority to Enforce and Collect.*  The Board shall take prompt action against any violator to enforce the provisions of the Declaration, Bylaws, the Fishing Rock Rules and Regulations and any other rules and regulations adopted pursuant thereof, including prompt action to collect any unpaid assessment. In doing so, the Board may exercise one or more of the remedies, separately or concurrently, specified in the Declaration or Bylaws, as well as any other remedies which may be available at law. In addition, any aggrieved Owner may bring an action to recover damages or to enjoin, abate, or remedy any noncompliance or breach by appropriate legal proceedings.

9.3   *Abatement and Enjoining of Violations.*  If any person violates any provision of the Declaration, Bylaws, the Fishing Rock Rules and Regulations or any other rules or regulations adopted pursuant thereto, the Board shall have the right to:

   (a)   Enter the Lot or Living Unit in which or as to which such violation exists and to summarily abate and remove, at the expense of the Owner, any thing or condition that may exist therein contrary to the intent and meaning of said provisions, and the Board shall not thereby be deemed in any manner of trespass.

   (b)   Enjoin abate, or remedy such thing or condition, including removal or alteration of construction. by appropriate legal proceedings

9.4   *Interest; Late Charges; Fines.*  Interest shall accrue on any assessment or portion thereof not paid when due at the rate of 1.5 percent per month until paid. The Board may, if it deems appropriate, impose charges for late payments of assessments and, after giving notice and an opportunity to be heard. levy reasonable fines for violations of the Declaration, Bylaws, the Fishing Rock Rules and Regulations and any other rules and regulations adopted pursuant thereto.

Page -13-RESTATED FISHING ROCK DECLARATION

Exhibit __1__
Page __13__ of __21__

9.5    *Acceleration of Assessment.* If an Owner fails to pay any installment of an assessment when it is due the Board may, after ten days' written notice, declare the defaulting Owner's entire annual or special assessment due immediately, and interest thereafter shall accrue on the entire unpaid assessment at 1.5 percent per month until paid.

9.6    *Attachment, Notice, Recordation, Duration and Foreclosure of Lien; Appointment of Receiver; Power to Bid at Foreclosure Sale.* Pursuant to ORS 94.709, the Association shall comply with the provisions regarding the attachment, notice, recordation and duration of liens established on real property under ORS 87.352 to 87.382 and provisions regarding the foreclosure of liens under ORS Chapter 88, except that notwithstanding ORS 87.376, a lien for an unpaid assessment shall continue in force and the suit to foreclose such lien need not be commenced for a period of three years from the date the particular unpaid assessment became due. In any such foreclosure suit, the Owner shall be required to pay reasonable rental for the Lot or Living Unit. The plaintiff in such foreclosure suit shall be entitled to the appointment of a receiver to collect the rent. The Board, acting on behalf of the Association, shall have the power to bid on the Lot or living Unit at the foreclosure sale, and to acquire and hold, lease, mortgage and convey the same on behalf of the Association.

9.7    *Action to Obtain and Recover a Money Judgment.* The Board may bring an action to obtain a money judgment against a Resident or Owner for damages for the Resident's or Owner's breach or noncompliance with the provisions of the Declaration, Bylaws, the Fishing Rock Rules and Regulations or any other rules and regulations adopted pursuant thereto The Board may bring an action to obtain a money judgment for unpaid assessments against the Owner personally obligated to pay the same; the action to recover a money judgment for unpaid assessments may be maintained without foreclosing or waiving the lien securing the same.

9.8    *Collection Costs; Attorney Fees.* Owners who fail to pay assessments when due shall be obligated to pay reasonable fees and costs including, but not limited to attorney fees incurred in connection with the Board's efforts to collect the delinquent or unpaid assessments, whether or not suit or action is commenced. If the Board commences suit or action for the collection of any amounts due or to seek damages or enforcement of any provision of the Declaration, Bylaws, the Fishing Rock Rules and Regulations or any other rules and regulations adopted pursuant thereto, the Owner or Owners, jointly and severally, shall be liable for the costs of such suit or action, including reasonable attorney fees to be fixed by the court or courts, both at trial and on appeal in addition to all other sums or obligations.

Page - 14 -RESTATED FISHING ROCK DECLARATION

Exhibit _1_
Page _14_ of _21_

## ARTICLE 10: INSURANCE

10 1   *Coverage.* For the benefit of the Association and the Owners the Board shall obtain and maintain at all times, and shall pay as common expenses, the following insurance:

(a)   A policy or policies insuring the Association, its Board and the Owners individually, against any liability to the public or the Owners and their invitees or tenants, incident to the ownership, supervision, control or use of the Common Property. Limits of liability under such insurance shall be not less than $500,000.00 per occurrence for bodily injuries and property damage liability endorsements wherein the rights of named insured under the policy or policies shall not be prejudiced as respects his, her or their action against another named insured

(b)   The Board may obtain and maintain a fidelity bond naming such persons as may be designated by the Board as principals and the Association and the Owners as obligees, for the amount determined by the Board, and may require that all officers and employees of the Association handling or responsible for Association funds obtain adequate fidelity bonds. The premiums on such bonds shall be paid by the Association

(c)   The Board may obtain additional insurance that it deems necessary to protect the interests of the Association. The Board shall make every reasonable effort to secure insurance policies that provide for the following:

    1.   A waiver or subrogation by the insurer as to any claims against the Board, the manager, the Owners, and their respective agents and guests.

    2   A provision that the policy cannot be canceled, invalidated or suspended on account of the conduct of any one or more individual Owners.

    3   A provision that the policy cannot be canceled invalidated or suspended on account of the conduct of any officer or employee of the Board without prior demand in writing that the Board of Directors or Administrator cure the defect.

    4.   A provision that any "no other insurance" clause in the policy excludes individual Owner's policies from consideration.

10 2   *Limitations.* The Association shall not be responsible for any loss or damage to real or personal property of any Owner, whether stored on the Common Property or in the Owner's Lot or Living Unit, nor shall the Association maintain any insurance coverage for such loss.

Page -15-RESTATED FISHING ROCK DECLARATION

Exhibit *1*
Page *15* of *21*

## ARTICLE 11: GENERAL PROVISIONS

11.1    *Records.* In addition to the records required in the Bylaws, the Board shall keep detailed records of the actions of the Board, including minutes of the meetings of the Board and minutes of the meetings of the Association. The Board shall also keep detailed and accurate financial records in chronological order of the receipts and expenditures for common expenses. The Board shall also maintain an assessment roll in which there shall be an account for each Lot or Living Unit subject to assessment. Such account shall designate the name and address of the Owner of the Lot or Living Unit, the amount of each assessment against the Owner, the dates and amounts on which the assessment becomes due, the amounts paid upon the account and balance due on the assessments.

11.2    *Indemnification of Directors, Officers, Employees and Agents.* The Association shall indemnify any director, officer, employee or agent who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by the Association) by reason of the fact that he is or was a director, officer, employee or agent of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorney fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by said person in connection with such suit, action or proceeding if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to the best interests of the Association, and, with respect to any criminal action or proceedings, that he did not have reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or with a plea of nolo contendere or its equivalent, shall not of itself create a presumption that a person did not act in good faith and in a manner which he reasonably believed to be in, or not opposed to, the best interests of the Association, and, with respect to any criminal action or proceedings, that he did not have reasonable cause to believe his conduct was unlawful. Payment under this clause may be made during the pendency of such claim, action, suit or proceeding as and when incurred, subject only to the right of the Association to reimbursement, if it is proven later that said person had no right to such payments. All persons who are ultimately held liable for their actions on behalf of the Association as director, officer, employee or agent shall have a right to contribution over and against all other directors, officers, employees or agents and members of the Association who participated with or benefitted from the acts which created said liability.

11.3    *Enforcement.* The Declarant, the Association, the Owners of Lots or Living Units within the Property, or the holder of any recorded mortgage on any of the Lots or Living Units may, by any proceeding at law or in equity enforce the covenants, conditions, restrictions, reservations, easements, liens and charges now or hereinafter imposed by any of the provisions of this Declaration. Failure to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter. If any suit or action is commenced to enforce the terms and provisions of this Declaration, the prevailing party shall be entitled to its attorney fees and costs in such suit or action to be fixed by the trial court, and in the event of an appeal, the cost of the appeal, together with reasonable attorney fees to be set by the appellate court, in addition thereto, the Association shall be entitled to its reasonable attorney fees incurred in any enforcement activity taken on delinquent assessments, whether or not suit or action is filed.

Page -16-RESTATED FISHING ROCK DECLARATION

Exhibit  1
Page  16  of  21

11.4    *Severability.*  Invalidation of anyone of these covenants or restrictions by judgment or court order shall not affect the other provisions hereof and the same shall remain in full force and effect.

11.5    *Duration.*    The covenants and restrictions of this Declaration shall run with and bind the land for a term of 21 years from the date of recording this declaration  after which time they shall be automatically extended for successive periods of ten years, unless rescinded by a vote of at least 90 percent of the members and approved by 90 percent of the holders of first mortgages on the Lots and Living Units.

11.6    *Rights of Mortgagees.*  Any holder of a first mortgage lien on any Lot or Living Unit upon written request to the Board. shall have the right to:

(a)    Receive timely written notice of meetings of the Association;
(b)    Receive timely written notice of any proposed abandonment by or termination of the Association;
(c)    Receive timely written notice of any material amendment of the Declaration, the Articles of Incorporation or Bylaws;
(d)    Inspect the financial records and similar documents of the Association at reasonable intervals during normal business hours;
(e)    Receive written notice of substantial damage to or destruction of any Common Property and/or any Improvements thereon; and
(f)    Receive timely written notice of any condemnation or eminent domain proceeding affecting the Common Property or any portion thereof.

11.7    *Notice of Default by Mortgagor.*  Upon written request of a mortgagee, the Association shall give the mortgagee written notification of any default by the mortgagor in the performance of such mortgagor's obligations under this Declaration which is not cured within 30 days.

## ARTICLE 12: AMENDMENTS TO DECLARATION

12.1    *Amendment by Members.*  This Declaration may be amended by affirmative vote of not less than three-fourths (3/4) of all Association members; provided, however, that no amendment creating  limiting or diminishing any special declarant rights  increasing the number of Lots or changing the boundaries of any Lot or any uses to which any Lot is restricted shall be valid unless the Owners of the affected Lots unanimously consent to the amendment. No amendment may be made that is in conflict with the Lincoln County Planning Commission's conditions of approval for the subdivision.

12.2    *Declarant's Right to Amend.*  Notwithstanding the other provisions of this Declaration  the Declarant may amend the Declaration or initial Bylaws in order to comply with requirements of the Federal Housing Administration, the United States Department of Veterans' Affairs, the Farmers Home Administration of the United States, the Federal National Mortgage Association  the Government National Mortgage Association  the Federal Home Mortgage Loan Corporation, any department, bureau, board, commission or agency of the United States or the State of Oregon or any corporation wholly owned, directly or indirectly  by the United States or the State of Oregon which insures, guarantees or provides financing for a planned community or Lots or Living Units in a planned community; provided, however, that if the need for such an amendment occurs after

Page -17-RESTATED FISHING ROCK DECLARATION

Exhibit  1
Page  17  of  21

the turnover meeting described in the Bylaws, such an amendment shall not be effective without the approval of the Association.

12.3    *Recordation of Amendments.*   Amendments to the Declaration shall be executed and certified by any officer of the Association designated for that purpose or in the absence of designation, by the President of the Association, and recorded in the deed records of Lincoln County. An amendment of the Declaration is effective only upon recordation

IN WITNESS THEREOF, as authorized by the Board of the Fishing Rock Owners Association and endorsed by its members.

FISHING ROCK OWNERS ASSOCIATION

By _____
     Larry Van Gordon, President

STATE OF OREGON          )
                         ) ss.
County of Lincoln        )

SIGNED AND SWORN to before me this 15 day of January , 2007 by Larry Van Gordon.

[OFFICIAL SEAL
H COFFEY
NOTARY PUBLIC - OREGON
COMMISSION NO. A367354
MY COMMISSION EXPIRES JANUARY 28, 2009]

_____
Notary Public for Oregon
My Commission Expires: 1/28/19

By: _____
     Gail R. Ohm  Secretary

STATE OF OREGON          )
                         ) ss.
County of Lincoln        )

SIGNED AND SWORN to before me this 26th day of January , 2007 by Gail R. Ohm

[OFFICIAL SEAL
TERI J PARKE
NOTARY PUBLIC-OREGON
COMMISSION NO. 412196
MY COMMISSION EXPIRES NOVEMBER 23, 2010]

_____
Notary Public for Oregon
Commission Expires: 11-23-2010

Page -18-RESTATED FISHING ROCK DECLARATION

Exhibit 1
Page 18 of 21



EXHIBIT 1A

FISHING ROCK

B447 P0063

BOOK 248 PAGE 1312

### TRACT B

A tract of land located in Section 29, Township 8 South, Range 11 West of the Willamette Meridian, in Lincoln County Oregon, being more particularly described as follows:

Beginning at the Initial Point, which is the northeast corner of the Capon tract as shown on Lincoln County Survey #13,874 and is located on the east line of said Section 29, North 0°02'04" West 499.54 feet from the southeast corner of said Section 29;

thence along the north line of said Capon tract North 89°32'45" West 485.27 feet to the southwest corner of Lot 6 FISHING ROCK, and the true point of beginning of the herein described tract;

thence North 6°00' West  91.03 feet;

thence North 12°30' East  95.96 feet;

thence North 11°00' East  74.15 feet;

thence North 4°00' West  35.98 feet;

thence North 19°58' East  54.98 feet;



thence North 47°00' East  136.04 feet;

thence North 32°00' East  39.12 feet;

thence North 41°57' East  77.51 feet;

thence North 25°00' East  93.81 feet;

thence North 69°00' East  133.65 feet;

thence North 8°00' East  18.89 feet to the south line of the tract described in deed to the State of Oregon Parks and Recreation Department recorded in Microfilm Volume 233 Page 2290 Lincoln County Deed Records;

thence along the south line of said State tract West  50.36 feet;

thence North 65°00' West 170 feet  more or less  to the mean high water line of the Pacific Ocean;

thence southerly along said high water line 800 feet, more or less, to a point on the north line of said Capon tract that is North 89°32'45" West of the true Point of Beginning;

thence South 89°32'45" East 150 feet  more or less, to the true point of beginning.

STATE OF OREGON ) ss.
County of Lincoln )

I, Dora M. Jenkins, County Clerk, in and for said county, do hereby certify that the within instrument was received for record, and recorded in the Book of Records of said county at Newport, Oregon.

Book _____ Page _____

WITNESS my hand and seal of said office affixed.

Dora M. Jenkins, County Clerk

By _____ Deputy

Doc # 6088122
Rect # 31057                    90.00
08/07/1992 03:13:45PM

REGISTERED
PROFESSIONAL
LAND SURVEYOR

OREGON
JULY 14, 1992
STEPHEN LOY SWINEHART
2013

Revised August 6, 1992

EXHIBIT B

Exhibit 1
Page 21 of 21