

Bureau of Labor and Industries
Brad Avakian
Commissioner

March 30, 2012

Fishing Rock Home Owners' Association, Inc.
Attn: Don Roberts, President
175 Fishing Rock Dr.
Depoe Bay, OR 97341

    Re:    *David Roberts v. Fishing Rock Owners' Association*
             HUHODP110513-10781

Dear Mr. Roberts:

BOLI has made a preliminary cause determination in the above-referenced fair housing complaint. Specifically, BOLI finds that Respondent has violated and continues to violate state and federal fair housing laws. See enclosed Legal Update for a summary of the relevant law. BOLI's preliminary findings are summarized below.

**Discriminatory terms, conditions, privileges, or services and facilities based on disability**

A disabled person, as defined by the Fair Housing Act, includes one who is recovering from alcohol and drug addition. See *Joint Statement Of The Department Of Housing And Urban Development And The Department Of Justice: Reasonable Accommodations Under The Fair Housing Act, May 17, 2004*, and *Joint Statement Of The Department Of Justice And The Department Of Housing And Urban Development: Group Homes, Local Land Use, And The Fair Housing Act, August 18, 1999.* ("Joint Statements")

Respondent denied and continues to deny Complainant's request to lease his home to a group of six to nine individuals who are recovering from alcohol and drug addiction (group home). See Don Roberts' March 11, 2011, email to Complainant stating, in part, "Regarding a drug rehab house, that issue is completely out of the question..."

**Failure to Accommodate a Disability**

It is unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling. *Joint Statements.*

Respondent denied and continues to deny Complainant's request for an exception to its parking rules on behalf of the group home residents. These residents will need vehicles to access recovery services, which are located several miles from Fishing Rock. Until June 2011 (two months after Complainant filed his fair housing complaint), Respondent's CC&R's allowed Complainant to park vehicles on his two vacant lots. Respondent amended its CC&R's in June 2011, to state, in part, "There shall be no parking of any

PORTLAND
800 NE Oregon St. Suite 1045
Portland, OR 97232-2180
(971) 673-0761
Fax (971) 673-0762

EUGENE
1400 Executive Parkway, Suite 200
Eugene, OR 97401-7103
(541) 686-7623
FAX (541) 686-7980

BEND
Apprenticeship and Training
Worksource Bend
1645 NE Forbes Rd, Ste 106
Bend, OR 97701-4990
(541) 322-2435
FAX (541) 389-8265

MEDFORD
Apprenticeship and Training
119 N Oakdale Ave.
Medford, OR 97501-2629
(541) 776-6201
FAX (541) 776-6284

SALEM
3865 Wolverine St. NE; E-1
Salem, OR 97305-1268
(503) 378-3292
FAX (503) 373-7636

Oregon Relay TTY:711

www.oregon.gov/boli
AN EQUAL OPPORTUNITY EMPLOYER

PENDLETON
Civil Rights
1327 SE 3rd St.
Pendleton, OR 97801-4101
(541) 276-7884
FAX (541) 276-5767

vehicles (trucks, passenger vehicles, motor homes, campers, boats, trailers, golf carts, motorcycles, or similar recreational vehicle) on any Lot unless said Lot is developed with a single-family dwelling and a garage..." *Additional Rules And Regulations And Schedule Of Fines, Section I, Subsection 3.* (Incidentally, Complainant alleges that Respondent has rejected his plan to develop the two vacant lots.)

a. Respondent has failed to meet its burden of establishing that a group home presents a direct threat to its community.

"A determination that an individual(s) poses a direct threat must rely on an individualized assessment that is based on reliable objective evidence (e.g., current conduct, or a recent history of overt acts)," not stereotypical fears or prejudices about individuals recovering from alcohol and drug addiction. *Joint Statements.*

Respondent has provided no evidence to support a finding of a direct threat.

b. Respondent has failed to meet its burden of establishing that it approval of a group home in its community will impose an undue financial and administrative burden on Respondent or fundamentally alter the nature of Respondent's operations. *Joint Statements.*

The determination of undue financial and administrative burden must be made on a case-by-case basis involving various factors, such as the cost of the requested accommodation, the financial resources of the provider, the benefits that the accommodation would provide to the requester, and the availability of alternative accommodations that would effectively meet the requester's disability-related needs. *Joint Statements.*

Respondent had provided no evidence to support a finding of undue hardship.

See enclosed Resident Handbook and Screening Procedures that Complainant intends to use and Complainant's parking plan diagram (enclosed).

c. Failure to Engage in the Interactive Process

A housing provider must engage in a meaningful interactive process with the requester to discuss the disability-related need for the requested accommodation and possible alternative accommodations. *The Department Of Housing And Urban Development And The Department Of Justice; Reasonable Accommodations Under The Fair Housing Act, May 17, 2004.*

The record is clear that Respondent was not and is not open to participating in a meaningful interactive process with Complainant.

**Retaliation**

It is unlawful for any person, whether acting for herself or for another, to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or

enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by fair housing laws. ORS 659A.145, Fair Housing Act 42 U.S.C 3601.

A letter dated March 14, 2011, from Gary Hamilton, Respondent's attorney, to Complainant states, in part, "[P]roperties within the Fishing Rock subdivision do not allow for any property owner to run a board and care facility for any reason and therefore, the Fishing Rock Home Owners' Association will use what ever means possible to stop you from carrying out such a use on your property. This may include, but is not limited to, obtaining a temporary restraining order from Lincoln County Court to ensure that you do not in fact open a board and care facility within the gated community of Fishing Rock."

Two emails dated May 16, 2011, from Nancy Vincent, Fishing Rock resident, to Respondent board member Carol Lentz state, (1) "Have you seen the email from David?," (2) It isn't good- he is filing a complaint with the Bureau of Labor and Industries alleging discriminatory housing practices. He isn't going away easily." (On June 17, 2011, Respondent amended its parking rules, which, in effect, diminished Complainant's ability to attract recovering tenants who owned vehicles.)

**Conciliation**

If you are interested in exploring conciliation in this matter, you must contact me with a settlement offer by **April 6, 2012 at 5:00 p.m.**

You may contact me at (971) 673-0791 or via email at kerry.johnson@state.or.us.

Sincerely,

Kerry Johnson
Senior Investigator
Civil Rights Division, Portland Office

Cc: Terry Greenman
 Roger Kemp
 Nancy Vincent
 Carol Lentz
 Larry Van Gordon
 Gail Ohm
 Jim Robinson
 Attorney George A. Burgott
 Attorney Robert D. Lowry
 Attorney Leslie A. Kocher-Moar.

Case 6:12-cv-00754-AA    Document 1-3    Filed 04/27/12    Page 4 of 7

# Legal Update

## HOMEOWNERS ASSOCIATIONS AND GROUP HOMES

The governing documents of many homeowner and condominium associations contain provisions prohibiting commercial activities and restricting the use of the property to single family residential use. The recent increase in the number of so-called group homes for senior citizens, disabled or others who may need some type of assisted living frequently is in direct conflict with the association documents. While each situation is unique and must be evaluated individually, in virtually all cases the association will NOT be able to enforce these restrictions against a group home because of the provisions of the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq. (the 'Fair Housing Act') and the Arizona Fair Housing Act, A.R.S. § 41-1491,et seq. (the 'Arizona Act') (collectively as the 'Fair Housing Acts').

The Fair Housing Acts prohibit discrimination against handicapped persons. The term 'handicap' is very broadly defined in the Fair Housing Acts as meaning, with respect to a person, (1) a physical or mental impairment which substantially limits one or more major life activities, or (2) a record of having such an impairment or (3) being regarded as having such an impairment. The rules and regulations issued by the Department of Housing and Urban Development implementing the Federal Fair Housing Act define "major life activities" as functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working.

Under the Fair Housing Acts, it is unlawful for any person to discriminate in the sale of a dwelling or to otherwise make unavailable or deny such a dwelling to any buyer because of the handicap of o person residing in or intending to reside in that dwelling after it is sold. The Fair Housing Acts also make it unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Acts· or to refuse to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling.

The prohibitions against discrimination on the basis of handicap in the Fair Housing Acts apply to homeowners associations and individuals. Thus, an association's CC&Rs cannot be enforced to the extent that enforcement would constitute unlawful discrimination against handicapped persons. This is illustrated by the case of Rhodes vs. Palmetto Pathway Homes, Inc., 400 S.E.2d 484 (S.C. 1990) in which a property owner filed suit to enjoin a nonprofit organization from establishing a group residence in a residential subdivision. The restrictive covenants for the subdivision stated that the property could only be used for private residence purposes. The trial court determined that a group residence would violate the restrictive covenants and granted a permanent injunction against the nonprofit organization which wanted to establish the group home. In reversing the decision of the trial court, the Supreme Court of South Carolina held that the interpretation of the restrictive covenants in such a way as to prohibit location of a group residence for mentally impaired adults in a community is contrary to public policy as enunciated in the Fair Housing Act and in the laws of the State of South Carolina. The Supreme Court of South Carolina noted that the Fair Housing Act articulates a public policy of the United States as being to encourage and support handicapped persons rights to live in a group home in the community of their choice. The Court concluded that since the need for treatment and maintenance of the mentally handicapped is a legitimate and strong public interest recognized by state and federal legislation, a refusal to enforce restrictive covenants against otherwise unobtrusive group homes substantially advances that interest by promoting integration of the mentally handicapped into all neighborhoods of the community.

Other courts have held that the Fair Housing Acts prohibit the enforcement of private deed restrictions against a group home for the handicapped. In Broadmoor San Clemente Homeowners Ass'n. vs. Nelson, 30 Cal. Rptr. 2d 316 (Cal.App. 1982), the California Court of Appeals held that the Fair Housing Act and the California Fair Housing Act invalidate restrictive covenants that prohibit residential care facilities for non-ambulatory elderly persons. Similarly, in Deep East Texas Regional Mental Health and Mental Retardation Services vs. Kinnear, 877 S.W.2d 550 (Tex. App. 1994), the Texas Court of Appeals ruled that enforcement of a restrictive covenant against a group home for disabled adults would violate the Fair Housing Act. The Supreme Court of New Mexico in the case of Hill vs. Community of Damien of Molokai, 911 P.2d 861 (N.M. 1996) ruled that even if four unrelated residents of a group home for persons with acquired immune deficiency syndrome do not constitute a 'family' so that it violated the

covenant restricting use of the property to single family residences, the covenant would violate the Fair Housing Act and a refusal of the homeowners association to permit the group home even though it violated the covenants would constitute a violation of the section of the Fair Housing Act that requires a homeowners association to make reasonable accommodations in its rules to afford handicapped persons equal opportunity to use and enjoy dwellings.

The public policy supporting the establishment of group homes is pervasive in virtually all of the cases, and is illustrated by a decision rendered even prior to the adoption of the Fair Housing Acts. In Westwood Homeowners Association vs. Tenhoff, 155 Ariz. 229, 745 P.2d 976 (Ariz. App. 1987), the Arizona Court of Appeals refused to enforce a restrictive covenant, in such a manner as to prohibit a group home for developmentally disabled persons. The Westwood Homeowners Association filed an action seeking injunctive relief to compel the closing of a Mesa home in which six developmentally disabled persons lived. The Association contended that the use of the home violated the restrictive covenants recorded against the subdivision which prohibited a business of any kind or any hospital, sanitarium, or other place for the care or treatment of the sick or disabled, physically or mentally. The Arizona Court of Appeals first considered the question of whether the operation of the residential facility for the developmentally disabled violated the restrictive covenant. The court noted that the facility was admittedly a place for the care of individuals who are physically or mentally disabled. The court also found that the state licensed and funded residential care facility violated the prohibition that no business of any kind or character whatsoever could be conducted from a residence on the lots. Accordingly, the court held that the facility violated the restrictive covenants.

The court then turned to the question of whether the enforcement of the restrictive covenant to prevent the use of the property for a residential facility for the developmentally disabled would be contrary to public policy. The court noted that on one hand, Arizona recognized a public policy of enforcing private restrictive covenants of landowners. On the other hand, Arizona had adopted a public policy of assisting the developmentally disabled by promoting their deinstitutionalization. The court noted that the public policy was codified in part in the Development Disabilities Act of 1978. After discussing that Act and the public policy evidenced by that Act, the Arizona court of Appeals held that the public policy extended to not only zoning ordinances but to private restrictive covenants which impeded the reasonable establishment of residential facilities for developmentally disabled persons in residential neighborhoods.

Any action taken by an association to attempt to enforce the CC&Rs against group homes for the handicapped could constitute a violation of the Fair Housing Acts and subject the Association to significant liability. This is illustrated by the case of United States vs. Scott, 788 F. Supp. 1555 (D. Kan. 1992), in which the United States brought suit against homeowners for violations of the Fair Housing Act, alleging that the defendants violated the Fair Housing Act by writing a letter threatening the filing of a lawsuit and then by filing suit in the District Court of Russell County, Kansas, to enforce a restrictive covenant limiting the use of lots to single family dwellings. Developmental Services of Northwest Kansas, an organization that operates group homes for disabled individuals, signed a purchase contract to purchase a residence. The defendants filed an action to enjoin the sale alleging that the sale would violate the restrictive covenants applicable to the subdivision that limited the use of the lots to single family dwellings. The state court held that the use of the residence for a group home for disabled individuals did not violate the restrictive covenant.

Following the dismissal of the state court action, the sellers of the property filed a housing discrimination complaint with the United States Department of Housing and Urban Development claiming that the action of the defendants in filing suit to block the sale was a violation of the Fair Housing Act. When attempts at reaching a conciliation agreement with the defendants were unsuccessful, the United States filed suit in United States District Court for violation of the Fair Housing Act.

The Court framed the issue as whether the defendants' actions in interfering with the proposed sale because of the handicaps of the prospective occupants constituted a violation of the Fair Housing Act. The Court noted that several federal courts have held that the Fair Housing Act prohibits the enforcement of restrictive covenants that discriminate, or have the effect of discriminating, on the basis of handicap. The Court also referred to the report of the House Committee on the Judiciary with respect to the Act which stated that the Act "is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's handicap and which...excludes for example, congregate living arrangements for persons with handicaps." The Court also noted that the House Report further explained that the Act protects against efforts to "restrict the ability of individuals with handicaps to live in communities."

The Court, therefore, held that the defendants' actions in attempting to enforce a restrictive covenant to prevent handicapped persons from residing in their neighborhood constituted discrimination prohibited by the Act. Specifically, the Court found that by attempting to enforce a restrictive covenant to prevent handicapped individuals from residing in their neighborhood, the defendants "otherwise made unavailable or denied" a dwelling because of the handicap of persons intending to reside in that dwelling after it is sold. The Court stated that the phrase in the Act "otherwise make unavailable or deny" would reasonably encompass any act of enforcing a mutual restrictive covenant through the judicial system for the purpose of denying equal housing opportunities to disabled individuals. In addition, the Court held that the defendants' act of sending a letter threatening a lawsuit to enforce the covenant also constituted a violation of the provisions of the Fair Housing Act which prohibit making, printing or publishing any statement indicating a proscribed preference, limitation or discrimination based upon handicap.

In United States vs. Wagner, 940 F.Supp. 972 (N.D.Tex., 1996), the United States filed a Fair Housing Act lawsuit against homeowners in a subdivision in Ft. Worth, Texas, alleging that by filing a state lawsuit to prevent a lot owner from selling their home for use as a group home for six mentally retarded children, the homeowners violated the Fair Housing Act. The District Court stated that when Congress amended the Fair Housing Act in 1988 to prohibit discrimination against persons with handicaps, it made clear that the Fair Housing Act was intended to prohibit special restrictive covenants which have the effect of excluding congregate living arrangements for persons with handicaps and that Congress specifically stated that the Fair Housing Act prohibits the application of special requirements through restrictive covenants that have the effect of limiting the ability of handicapped persons to live in the residence of their choice in the community. The District Court also noted that since the 1988 amendments to the Fair Housing Act took effect, courts have made clear that single family deed restrictions cannot be used to exclude group homes for disabled persons from single family neighborhoods. Accordingly, the District Court concluded that the defendants had violated the Fair Housing Act when they filed the state lawsuit to prevent the sale of the home for use as a group home for six mentally retarded children.

For the purpose of this article, we have assumed that the residents of a group home will fall within the definition of handicapped contained in the Fair Housing Acts. If the residents do not fall within that definition, it is possible that the provisions of the association's governing documents may be enforced to prohibit commercial and nonresidential uses. However, the law is now abundantly clear that group homes for the handicapped cannot be prohibited in associations, notwithstanding the fact that the governing documents might otherwise appear to prevent them.

Dyekman, Meda, Curtis,

Cohen & Karow, P.L.C.

6750 East Camelback Road

Suite 104

Scottsdale, Arizona 85251 (602) 481-0202   (602) 481-0555 (Fax)

This update is only a summary of the new legislation, and is not intended as legal advice for a specific set of circumstances. For further information contact Don Dyekman or Dan Curtis at the above address or phone.