IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FISHING ROCK OWNERS'
ASSOCIATION, INC.,

       Plaintiff,                   Case No. 6:12-cv-00754-AA

    v.

                                          OPINION AND ORDER

DAVID ROBERTS and SHARON
ROBERTS,

       Defendants.

---

AIKEN, Chief Judge:

    Plaintiff Fishing Rock Owners' Association ("the Association") filed a complaint in Lincoln County Circuit Court seeking a declaratory judgment to enforce the covenants and restrictions prohibiting commercial activities within the Fishing Rock subdivision. Defendants David Roberts and Sharon Roberts ("the Roberts") removed the Association's claims to federal court and

1   - OPINION AND ORDER

filed three counterclaims alleging disability discrimination and retaliation in violation of the Fair Housing Act ("FHA")(codified in Title VII of the Civil Rights Act of 1964), the Fair Housing Amendments Act of 1988 ("FHAA"), and Or. Rev. Stat. § 659A.145, and seeking a declaratory judgment that the Rules and Regulations recently adopted by the Association are null and void. The Association now moves under Fed. R. Civ. P. 56 for summary judgment on all three of the Roberts' counterclaims. The motion is granted and the case remanded to state court.

## I. BACKGROUND

The Association is a homeowner's association responsible for ensuring that all real property within the Fishing Rock subdivision located in Depoe Bay, Oregon complies with the recorded Fishing Rock Protective Covenants and Restrictions ("CC&Rs") and Rules & Regulations.

The Roberts own three adjacent lots within the Fishing Rock subdivision, one with a residence and two that are vacant. At the time the Roberts purchased their property, Article 5.1 of the CC&Rs imposed use restrictions on all lots; it allowed residential and recreational uses and prohibited commercial activities of any kind. Roberts Dep. 31:19-22 (attached as Exhibit A to Abrahams Decl.). The CC&Rs also allowed the construction of two-car garages and two additional parking spaces in the driveway.

Despite the CC&Rs, the Roberts routinely parked up to seven

2    - OPINION AND ORDER

vehicles on or around their properties. Roberts Dep. 69:16-19; Ex. 10. By September 2008, the Roberts knew that the Association was proposing to adopt new, more restrictive parking rules in the subdivision. Roberts Dep. 53:5-19, 60:2-14; Ex. 6.

In February 2009, the Roberts mentioned to the Association's attorney that they desired to operate a drug rehabilitation facility out of their home at Fishing Rock. Roberts Dep. 102:3-20, 103:17-20. On approximately March 9, 2011, the Roberts again advised the Association that they intended to open and operate an out-patient drug rehabilitation home for recovering alcoholics and drug users. Roberts Decl. at 2-3.

On April 17 and September 27, 2011, Mr. Roberts sent letters to the Association inquiring about his request for a "reasonable accommodation" for his group home. Roberts Dep. Ex. 19-20. However, Mr. Roberts never specified the reasonable accommodation he sought. See id.; Roberts Dep. 124:16-20.

On May 1, 2011, after Mr. Roberts' first letter, the Association adopted new Parking Rules and Regulations reflecting the 2008 proposed changes. Lentz Decl. at ¶ 6. The Rules prohibit the prolonged parking of a vehicle on any common property or Private Way, and also limit vehicle parking on individual lots to the garage or directly in front of the garage. Lentz Decl. Ex. A, at ¶ 2-3.

On October 19, 2011, the Association's attorney responded to

3    - OPINION AND ORDER

Mr. Roberts' written inquiries, indicating that Mr. Roberts had not provided enough information for the Association to review his request for accommodation. The attorney also asked Mr. Roberts to provide relevant licencing materials and certifications he had received to operate a group rehabilitation home so that the Association could review the documents and ensure compliance with state and federal laws. Roberts Dep. Ex. 24. Mr. Roberts did not provide the Association with any of the requested information. Roberts Dep. 143:21-25.

On or about March 2012, the Roberts began advertising their proposed drug rehabilitation home via the internet, a billboard, and in the windows of their vacant Fishing Rock residence they intended to use for the rehabilitation home. Roberts Decl. at 6.

On April 27, 2012, the Association filed a complaint against the Roberts in Lincoln County Circuit Court. The Association seeks a declaratory judgment that the Roberts had violated the CC&Rs and an injunction enjoining the Roberts from operating a business enterprise on their Fishing Rock property and requiring the Roberts to comply with the CC&Rs. Alternatively, the Association seeks an award of monetary damages in the event that injunctive relief was denied.

The Roberts subsequently removed the Association's action to federal court based on the artful pleading doctrine and their federal counterclaims. The Roberts deny that Article 5.1 of the

4   - OPINION AND ORDER

CC&Rs can prohibit them from using their Fishing Rock property as a group home for recovering alcoholics and drug users and allege that such restriction is made null and void under the FHA, FHAA, and Or. Rev. Stat. § 659A.145. Defs.' Answer and Countercl. ¶¶ 2-3.

The Association contends that the Roberts' counterclaims involve no genuine dispute of material fact and moves for summary judgment on all three counterclaims.

## II. DISCUSSION

Summary judgment is proper if the pleadings, depositions, discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a mater of law. Fed. R. Civ. P. 56(a),(c). Material facts are those which, under the applicable substantive law, could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. On the other hand, if, after the court has drawn all reasonable inferences in favor of the non-moving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 246-50 (internal citations omitted).

The moving party has the initial burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett,

5   - OPINION AND ORDER

477 U.S. 317, 323 (1986). The moving party may meet its burden with affirmative evidence or by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party meets its burden, the burden shifts to the non-moving party. Id. at 324. In meeting this burden, the non-moving party "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 248.

A. Standing

The Association argues that the Roberts lack standing to bring their FHA counterclaims because they have not suffered a distinct and palpable injury, nor do they bring the claims on behalf of viable tenants with a disability.

Standing to bring a FHA claim is very broad, constrained only by Article III of the U.S. Constitution. Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982). A plaintiff need not be the victim of the discrimination complained of, but must have suffered some "distinct and palpable injury" from the discriminatory conduct. Id.; San Pedro Hotel Co. v. City of L.A., 159 F.3d 470, 475 (9th Cir. 1998). Accordingly, the Roberts may assert a reasonable accommodation claim on behalf of a person with a disability, even though they themselves are not disabled. See Budnick v. Town of Carefree, 518 F.3d 1109, 1119 (9th Cir. 2008)(when the court evaluated whether plaintiff, a non-disabled

6    - OPINION AND ORDER

developer seeking to build a retirement community, suffered from a handicap defined by the FHAA, it looked at the characteristics of the potential residents of the retirement community, not the plaintiff). Nonetheless, any disabled person the Roberts bring the claim on behalf of must meet the elements required to bring a FHA claim, and the Roberts must present evidence that they have suffered a "distinct and palpable injury" from the discrimination. Havens, 455 U.S. at 372.

The Association argues that the Roberts cannot show a distinct and palpable injury arising from the Association's enforcement of the CC&Rs and the Parking Rules. Rather, the Association contends that the Roberts benefitted from using their Fishing Rock property as their primary residence for over five years, and after vacating their home, renting it to a tenant for income. Roberts Dep. 36:9-21; Abraham Decl. Ex. B.

In response, the Roberts argue that Mr. Roberts' declaration establishes the distinct and palpable financial injury they suffered and supports their allegations of harm to the people who "might have been able to enjoy the serenity of recovery from their addictions in the unique setting provided by Defendant's cliff top house . . . ." Defs.' Resp. at 8. In other words, the Roberts assert that potential tenants have been harmed by the Association's failure to accommodate the Roberts' request, which would have allowed such people to reside at their proposed Fishing Rock

7    - OPINION AND ORDER

rehabilitation home.

However, the Association presents undisputed evidence that the Roberts do not bring their FHA counterclaims on behalf of an aggrieved party with a disability. Mr. Roberts admits that he cannot identify a single person, by name, who allegedly contacted him to participate in the drug rehabilitation home. Roberts Dep. 125:9-13, 126:6-11. Additionally, when Mr. Roberts filed a FHA claim against the Association with Oregon's Bureau of Labor and Industry ("BOLI"), he indicated "none" where the application asked for a list of "other aggrieved persons" besides the complaintant. Roberts Dep. 136:1-7; Ex. 23. The Association also presents evidence that the Oxford House did not approve the Roberts' use of its name, nor did the Roberts have any affiliation with similar organizations that serve recovering addicts. Roberts Dep. 129:12-25, 130:6-8.

Further, the Association emphasizes that the Roberts' situation is distinguishable from cases where a third party is deemed to have standing to bring a FHA claim on behalf of future "John Doe" residents. For example, a district court held that an organization that had received a state contract to provide a residence for handicapped individuals had standing. See Easter Seal Soc'y of N.J., Inc. v. Township of North Bergen, 798 F. Supp. 228, 230 (D. N.J. 1992). In addition to alleged harm to its contractual rights, the plaintiff also demonstrated a likelihood of irreparable

harm to the "John Doe" residents. Id. at 237. The Association argues that the Roberts' situation is distinguishable because, unlike the Easter Seal plaintiffs, the Roberts have not received a contract to provide housing for recovering addicts and their plans to establish a group home are merely speculative. I agree. The Roberts present no evidence to the contrary.

Moreover, even if the Roberts were permitted to bring a reasonable accommodation claim on behalf of theoretical persons affected with the disability of alcoholism and drug addiction, they have not introduced any evidence that they have suffered a "distinct and palpable injury" from the Association's alleged failure to accommodate a group home. See Growth Horizons, Inc. v. Del. Cnty, Pa., 983 F.2d 1277, 1282 (3rd Cir. 1993) (regarding "distinct and palpable" injury, the court held that "[t]here is also no dispute that Growth sustained actual injury because of this conduct. As a result of the County's refusal to assume the leases, Growth has been forced to pay rent on the leases out of its own pocket . . . .").

With regard to his alleged financial injury, Mr. Roberts only asserts: "[m]y do [sic] diligence investigation has established that there is a need for such housing as we have anticipated and that people will come from across the country to reside in a facility such as we anticipate and particularly one with the unique coastal setting that our property has." Roberts Decl. at 11.

9    - OPINION AND ORDER

Aside from this conclusory and unsupported assertion, the Roberts present a complete lack of evidence of harm, offering the court only a vague assurance that they can provide expert opinion regarding how much income they might have received had they established a group home on their property and found tenants to participate in their program. Roberts Decl. at 10. On a motion for summary judgment, the Roberts must present more. Therefore, I find that the Roberts have failed to meet their burden, and as a result, they do not have standing to bring their FHA counterclaims.

However, should the Roberts be deemed to have standing, their counterclaims would fail for the reasons discussed below.

B. Discrimination Under the FHA

The Roberts allege in their first counterclaim that the Association failed to make a reasonable accommodation for a disability in violation of the FHA, FHAA, and Or. Rev. Stat. § 659A.145. They assert that the FHA and FHAA entitles them to reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling. Defs.' Answer and Countercl. ¶ 13. Although the Roberts themselves are not disabled, they argue that their civil rights were violated when the Association refused to make reasonable accommodations to its CC&Rs and its Rules & Regulations to permit defendants' proposed group home for recovering alcoholics and drug

10    - OPINION AND ORDER

users. Defs.' Answer and Countercl. ¶ 14.

To establish a failure to provide a "reasonable accommodation" claim under 42 U.S.C. § 3604(f)(3)(B), "a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Budnick, 518 F.3d at 1119 (quoting U.S. v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).[1] Therefore, to survive a motion for summary judgment on their claim, the Roberts must present evidence that they, or another aggrieved third party on whose behalf they bring this suit, meet the four elements required to bring a reasonable accommodation claim articulated in Budnick.

Although recovering alcoholics and recovering drug addicts are considered disabled under § 3602(h), the Roberts do not claim to personally suffer from either of these disabilities, nor are they affiliated with Oxford House or any similar organizations that provide services to people affected with the disability of alcoholism and drug addiction. Roberts Dep. 129:12-25, 130:6-8. Furthermore, Mr. Roberts does not dispute that he cannot provide

---

[1] The Roberts' counterclaims under Or. Rev. Stat. § 659A.145 mirror their federal law allegations; thus, the court's analysis under the FHA and FHAA applies to their state law claims.

11   - OPINION AND ORDER

the name of even one person who allegedly contacted him to participate in his proposed drug rehabilitation home. Roberts Dep. 125:9-13, 126:6-11. In fact, he states: "Of course we cannot inform the court exactly who would have rented the premises from us, but we can inform the court about the rental market for this type of rental and reasonably project with experts in the field what income could have been expected . . . ." Roberts Decl. at 10. Thus, the Roberts have failed to meet the first essential element of a reasonable accommodation claim.

With regard to the third element, the Roberts present no evidence that the accommodation they sought may be necessary to afford them an equal opportunity to use or enjoy their property. Generally, the line of cases that involve requests for parking accommodations involve handicapped individuals that face injury or pain from traveling long distances, including traveling from the house to the car. <u>Cal. Mobile Home Park Mgmt. Co.</u>, 107 F.3d at 1381 ("In these cases causation is clear—without a parking space close to the apartment, the handicapped individual's use and enjoyment of the dwelling is diminished."). Unlike the physically disabled individuals who need a reasonable parking accommodation, the Roberts present no evidence that their hypothetical residents suffer from a drug- and alcohol-related disability that requires additional parking in order for them to use and enjoy the Roberts' dwelling. Furthermore, as noted previously, Mr. Roberts could not

provide the loss of a single prospective resident because of the Association's Parking Rules and Regulations. Roberts Dep. 150:23-25, 151:1-5.

Finally, with regard to the fourth element, the Roberts present no evidence that the Association actually refused to make a reasonable accommodation. In fact, the Roberts have not presented evidence that they even articulated to the Association the reasonable accommodation they sought. Roberts Dep. 120:4-11, 124:7-20, 124:16-20; Ex. Nos. 19, 20, 24 (Mr. Roberts explicitly acknowledged that his request to the Association did not identify what reasonable accommodation he sought).

Furthermore, when asked by the Association to provide information and documentation regarding the Roberts' prospective rehabilitation home, Mr. Roberts failed to provide any information. Roberts Dep. 143:21-25. Instead, the Association presents evidence that Mr. Roberts made a specific request regarding parking to BOLI, but not to the Association. Roberts Dep. 150:13-20. Thus, the Association could not have failed to provide a reasonable accommodation because the Roberts failed to request an accommodation from the Association.

In sum, I find that the Roberts have failed to present any evidence supporting the essential elements of a reasonable accommodation claim. See 42 U.S.C. § 3604(f)(3)(B). Further, they do not challenge any of the evidence presented in the Associations'

13 - OPINION AND ORDER

motion, which negates at least one, if not all, of the essential elements of the Roberts' reasonable accommodation claim. As a result, summary judgment on the Roberts' first counterclaim is granted.

C. Retaliation Under the FHA

The Roberts' allege in their second counterclaim that the Association retaliated against them because of their request for accommodation, violating the FHA, FHAA, and § 659A.145. Defs.' Answer and Countercl. ¶ 19. Specifically, they allege that the Association retaliated by interfering with their attempts to establish a group home and by changing the Fishing Rock Parking Rules to specifically target their ability to establish a group home. Defs.' Answer and Countercl. ¶ 20.

The Association argues that the Roberts must show that it was motivated by a discriminatory purpose when amending the Parking Rules in order to survive summary judgment on the retaliation claim. See Pac. Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1158-59 (9th Cir. 2013). The Association presents evidence that its Board began discussing changes to the Parking Rules as early as June of 2008. Roberts Dep. 53:5-19; Ex. 6. Yet, it was not until February of 2009 that Mr. Roberts first announced his prospective plans to open a drug rehabilitation home on his property. Roberts Dep. 102:3-20, 103:17-20. Thus, the Association argues that this temporal sequence shows that the Parking Rules

14   - OPINION AND ORDER

could not have been adopted with a discriminatory purpose, because the decision to limit parking predated the Association's knowledge of the Roberts' plans. The Association also presents evidence that it changed the Parking Rules to keep property clean and free of unsightly excess vehicles. Roberts Dep. Ex. 7.

The Roberts do not refute the evidence presented by the Association regarding the temporal sequence of events, nor do they present any evidence to show a discriminatory motive. As a result, summary judgment on the Roberts' second counterclaim is granted.

D. <u>Defendants' Declaratory Judgment Claim</u>

In their third counterclaim, the Roberts seek declaratory judgment that the new Parking Rules & Regulations adopted by the Association are null and void because they were adopted in violation of, or not in accordance with, proper Fishing Rock procedure, and that the rules attempt to regulate private conduct beyond the reasonable regulation of use of private property.

In response, the Association argues that the parking restrictions were passed in accordance with the Association's recorded Bylaws. The Association presents evidence that the authority to pass such laws is granted to the Board in its Bylaws and that the proper procedures were followed. Article 5.2 of Bylaws (attached as Ex. B to Lentz Decl.); Lentz Decl. ¶ 6. The Roberts do not address the Associations' argument or evidence but only generally assert that the Association was concerned with stopping

the Roberts from using their house as a drug and alcohol recovery home.

Even if the Court recognized the Roberts' demand for declaratory judgment as a cognizable claim, the Association presents evidence that proper procedure was followed in adopting the parking restrictions, and the Roberts provide no evidence to rebut it. Therefore, summary judgement on the Roberts' third counterclaim is granted.

E. Remand to State Court

Upon dismissal of the Roberts' counterclaims, no federal claims remain in this case and diversity among the parties is absent. Accordingly, I exercise my discretion to decline supplemental jurisdiction and remand the Association's claims to the state circuit court.

A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

16   - OPINION AND ORDER

Here, this court is granting summary judgment on the claims which supported federal jurisdiction; in such instances, the Ninth Circuit encourages district courts to "decline jurisdiction over the state claims and dismiss them without prejudice." <u>Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n</u>, 884 F.2d 504, 509 (9th Cir. 1989). However, given that this case was removed to federal court, remand is appropriate.

### III. CONCLUSION

In sum, the Association has put forth ample evidence, primarily in the form of excerpts from Mr. Roberts' own deposition, showing that the Roberts cannot meet the threshold elements to sustain a reasonable accommodation claim under the FHA and that the Roberts' retaliation claim is meritless. The Roberts failed to refute any of the Association's evidence and failed to provide the Court with any evidence of their own that would support the existence of a genuine dispute of material fact with regard to any of their three counterclaims. Accordingly, the Association's motion for summary judgment (doc. 18) is GRANTED and the Roberts' counterclaims are HEREBY DISMISSED. This action is remanded to the Lincoln County Circuit Court. IT IS SO ORDERED.

DATED this 18th day of March, 2014.

_____
Ann Aiken
United States District Judge

17    - OPINION AND ORDER